UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Chi Son Oh and Soo Jin Han,

                    Plaintiffs,          07-CV-5145 (CPS)

   - against -

                                           MEMORANDUM OPINION
Raymond Leroy Murray and Shore Line    AND ORDER
Solutions,

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

     Plaintiffs Chi Son Oh and Soo Jin Han bring this diversity
action to recover for economic and non-economic losses that they
allegedly suffered after sustaining injuries in a car accident
with defendant Raymond Leroy Murray, who was operating a tractor-
trailer owned by defendant Shore Line Solutions.  Following
discovery, defendants move for summary judgment on the ground
that neither plaintiff sustained a "serious injury" within the
meaning of New York Insurance Law § 5102(d).  For the reasons set
forth below, defendants' motion is denied.

**BACKGROUND**

     The following facts are taken from the parties' submissions
in connection with this motion, including defendants' Local Rule
56.1 Statement ("Def.'s Stmt.").  Because plaintiffs have not
submitted a corresponding Rule 56.1 statement, in accordance with
Local Rule 56.1(c), defendants' Local Rule 56.1 Statement is
deemed admitted for the purposes of this motion.  Disputes are

noted.

Plaintiffs Oh and Han are both residents of New York State. Deposition of Chi Son Oh dated June 23, 2008 ("Oh Dep.") at 3:11-13; Deposition of Soo Jin Han dated June 23, 2008 ("Han Dep."), at 3:11-13. Defendant Murray is a citizen of Canada and a resident of the province of New Brunswick. Declaration of Raymond Leroy Murray dated October 23, 2008 ("Murray Decl."), ¶ 2. At the time of the events leading to this action, defendant Murray was employed by defendant Shore Line Solutions as a long-haul truck driver. *Id.* ¶ 3. Defendant Shore Line Solutions is also a resident of New Brunswick. Answer ¶ 2.

On June 24, 2007, at approximately 11:00pm, defendant Murray was operating a tractor trailer owned by defendant Shore Line Solutions, traveling south on the Van Wyck Expressway approaching the exit for the Long Island Expressway. Def.'s Stmt. ¶¶ 1-2; Murray Decl. ¶ 4. Approximately one-half to one-quarter mile before the exit, defendant Murray began to slow down his vehicle, intending to move into the exit lane. Murray Decl. ¶ 5. Before moving into the right lane, defendant Murray checked his driver and passenger side mirrors and observed a vehicle in the right lane, later identified as a 2005 Honda Accord operated by plaintiff Han, in which plaintiff Oh was a passenger. *Id.* ¶ 6; *see also* Def.'s Stmt. ¶ 3 (noting Han's ownership of vehicle). Plaintiff Han states, however, that her vehicle was never located

behind defendant Murray's vehicle.  Han Dep. at 27:13-16.

According to defendant Murray, after activating his right directional, he checked his side mirrors a second time 15 to 20 seconds after first checking them, and no longer saw a vehicle behind him.  Murray Decl. ¶ 6.  As he proceeded into the exit lane, however, he observed plaintiffs' vehicle, which was allegedly half in the right lane and half on the right shoulder, parallel with the passenger side of defendant Murray's tractor. *Id.* ¶ 7.  Plaintiffs' vehicle appeared to defendant Murray to be traveling faster than his vehicle and to have made contact with the Jersey Barrier located to the right of the shoulder and to have been propelled back onto the shoulder, such that the rear driver's side of plaintiffs' vehicle was parallel with the passenger side front bumper of the defendant Murray's vehicle. *Id.*  The rear driver's side of plaintiffs' vehicle then allegedly made contact with defendant Murray's vehicle's front bumper.  *Id.* According to defendant Murray, the impact of the two vehicles was slight.  *Id.* ¶ 8.

According to plaintiff Han, however, when plaintiff Han first saw defendant Murray's vehicle, it was located in the middle lane, about 20 to 30 feet behind plaintiffs' vehicle. About three to four minutes after first noticing defendant Murray's vehicle, plaintiff Han felt a "heavy" impact from behind.  Han Dep. at 25:17-29:8.  Plaintiff Oh, a passenger in

plaintiff Han's vehicle, did not see defendant Murray's vehicle until it made contact with plaintiffs' vehicle. Oh Dep. at 16:4-12. Plaintiff Oh also reports feeling a "heavy" impact from behind. *Id.* at 17:16-20.

After the collision, the parties slowed their vehicles and pulled onto the shoulder. Murray Decl. ¶ 9. They called the police, who responded to the scene at approximately midnight. Def.'s Stmt. ¶ 4. Both plaintiffs were thereafter transported to New York Hospital in Queens, New York. *Id.* They were treated in the Emergency Room, but neither was admitted. *Id.* ¶¶ 5-7; Han Dep. at 68:4-13; Oh Dep. at 33:16-22.

Following the June 24, 2007 accident, plaintiffs sought treatment for alleged neck, back, shoulder and knee injuries from, *inter alia*, a chiropractor and a physical therapist, beginning the day after the accident and continuing through the end of 2007 for plaintiff Han, and mid-January 2008 for plaintiff Oh. Han Dep. at 69:25-74:2; Oh Dep. at 34:18-37:14. In December 2007 or January 2008, plaintiffs' no-fault insurance benefits were terminated, and they did not seek further treatment. Han Dep. at 86:24-87:6; Oh Dep. at 45:18-46:7.

The present action was commenced on September 25, 2007.

**DISCUSSION**

I. <u>Summary Judgment Standard</u>

A court must grant a motion for summary judgment if the

movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900

F.2d 566, 568 (2d Cir. 1990).  Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).  In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

II.  New York's No-Fault Insurance Law

New York Insurance Law § 5104(a) provides that in a personal injury or negligence action between insured persons, "there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss."  New York Insurance Law § 5102(d) defines "serious injury" to include, *inter alia*, a personal injury that results in: (1) "permanent loss of use of a body organ, member, function or system" (the "permanent loss" category); (2) a "permanent consequential limitation of use of a body organ or member" (the "permanent consequential limitation" category); or (3) a "significant limitation of use of a body function or system" (the "significant

limitation" category).[1]

The New York Court of Appeals has held that because the purpose of the no-fault statute is to reduce litigation, "[i]t is incumbent upon the court to decide in the first instance whether [a] plaintiff has a cause of action to assert within the meaning of the statute" by "determin[ing] whether the plaintiff has established a prima facie case of sustaining serious injury." *Licari v. Elliott*, 57 N.Y.2d 230, 237 (1982). "If it can be said, as a matter of law, that plaintiff suffered no serious injury . . . , then plaintiff has no claim to assert and there is nothing for the jury to decide." *Id.*

In order to prevail on a motion for summary judgment on this issue, the defendant must offer evidence establishing a "prima facie case that plaintiff's injuries were not serious." *Gaddy v. Eyler*, 79 N.Y.2d 955, 956 (N.Y. 1992). In support of the argument that there is no serious injury, the defendant may rely on unsworn reports by plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits. *See McGovern v. Walls*, 607 N.Y.S.2d 964 (2d Dep't 1994); *Looney*

---

[1] New York Insurance Law § 5102(d) provides in full as follows: "'Serious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

*v. Epervary*, 599 N.Y.S.2d 989, 989-90 (2d Dep't 1993).

If the defendant makes out a prima facie case of lack of serious injury, the "burden then shift[s] to [the] plaintiff to come forward with sufficient evidence to . . . demonstrate that she sustained a serious injury within the meaning of the No-Fault Insurance Law." *Eyler*, 79 N.Y.2d at 957. To meet this burden, the plaintiff must offer "objective proof" of her injury. *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350 (2002). "[S]ubjective complaints alone are not sufficient." *Id*. Acceptable "objective" proof may include "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion" -- if supported by objective evidence -- or "[a]n expert's qualitative assessment of a plaintiff's condition . . . , provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Id*. An expert medical analysis that "is obviously premised on plaintiff's subjective complaints . . . does not rise to the level of credible medical evidence required" to support a claim of serious injury. *Dwyer v. Tracey*, 480 N.Y.S.2d 781, 783 (3d Dep't 1984). For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians. *See Bonsu v. Metro. Suburban Bus Auth.*, 610 N.Y.S.2d 813, 813-14 (2d Dep't 1994); *McLoyrd v.*

*Pennypacker*, 577 N.Y.S.2d 272, 273 (1st Dep't 1991).

III. Plaintiffs' Claims for Non-Economic Damages

Both plaintiff Oh and plaintiff Han assert that they are entitled to seek recovery for non-economic loss because they suffered injuries to the cervical spine, lumbar spine, shoulders and knees that qualify as "serious injuries" under the "permanent loss," "consequential limitation," and "significant limitation" categories of "serious injury." Affirmation of Andrew Park dated December 3, 2008 ("Pl.'s Br.") at ¶¶ 74-79. Defendants argue that they are entitled to summary judgment with respect to all three categories. Def.'s Reply at 8-12.

A. The "Permanent Loss" Category

The Court of Appeals of New York has held that "permanent loss of use" must be total to qualify as a "serious injury." *Oberly v. Bangs Ambulance Inc.*, 96 N.Y.2d 295, 299 (N.Y. 2001); *see also Saleh v. Bryant*, 49 A.D.3d 991, 992 (3d Dep't 2008); *Raugalas v. Chase Manhattan*, 760 N.Y.S.2d 204 (2d Dep't 2003) (no permanent loss of use because plaintiff did not suffer total loss of her cervical or lumbar spine). A partial loss of use of a body organ, member, function or system does not meet the statutory definition.[2] *Oberly*, 96 N.Y.2d at 299. No medical

---

[2] Plaintiffs cite a number of cases decided by lower New York State courts in the 1970s and 1980s to support their argument that a qualifying injury under the "permanent loss" category of § 5102(d) of the Insurance Law need not be a total loss of use of a body organ, member, function, or system. *See, e.g.*, *Harris v. St. Johnsbury Trucking Co., Inc.*, 393 N.Y.S.2d 611 (3d Dep't 1977); *Bassett v. Romano*, 511 N.Y.S.2d 298 (2d Dep't 1988). To the

account of plaintiffs' injuries suggests that plaintiffs have

suffered a total loss of the use of their cervical spines, lumbar

spines, shoulders, or knees, and plaintiffs do not suggest

otherwise in their brief in opposition to this motion.

Accordingly, plaintiffs' injuries do not qualify as serious

injuries under the "permanent loss of use" category.

B.    The "Permanent Consequential Limitation" and "Significant
      Limitation" Categories

      "Whether a limitation of use or function is 'significant' or

'consequential' (i.e., important . . . ) relates to medical

significance and involves a comparative determination of the

degree or qualitative nature of an injury based on the normal

function, purpose and use of the body part." *Dufel v. Green*, 84

N.Y.2d 795, 798 (N.Y. 1995).  A "minor, mild or slight limitation

of use should be classified as insignificant within the meaning

of the statute." *Licari v. Elliott*, 57 N.Y.2d 230, 236 (N.Y.

1982).  There is no basis to find a "consequential" or

"significant" limitation where the doctor has "diagnosed only a

mild injury, which plainly has not prevented plaintiff from

continuing [his] daily activities." *Dwyer v. Tracey*, 480

_____

extent that these courts held that "permanent loss" injuries need not be
total, however, those holdings were overruled by the New York Court of
Appeals' decision in *Oberly*.  *See Oberly v. Bangs Ambulance Inc.*, 96 N.Y.2d
295, 299 (N.Y. 2001) (noting that "[t]he serious injury category at issue,
'permanent loss of use,' has been in place since 1973 without legislative
change.  Until today, however, the question of how this statutory section
should be construed has never been squarely before this Court.  We hold that
to qualify as a serious injury within the meaning of the statute, 'permanent
loss of use' must be total").

N.Y.S.2d 781, 783 (3d Dep't 1984).

1.  *Defendants' Prima Facie Case*

To make out a prima facie case that plaintiffs have not suffered a "permanent consequential limitation" or a "significant limitation," defendants submitted sworn reports from three physicians: (1) Dr. Mitchell S. Raps, a neurologist, who examined plaintiff Oh on July 18, 2008 and plaintiff Han on August 1, 2008; (2) Dr. Peter A. Godsick, an orthopedist, who examined both plaintiffs on June 25, 2008; and (3) Dr. Roger E. Mosesson, a neuroradiologist, who, on August 25, 2008, evaluated plaintiff Oh's MRI scans performed on August 8-9, 2007 and August 20-21, 2007, and on August 26, 2008, evaluated plaintiff Han's MRI scans performed on July 26-27, 2007.  Defendants also submitted detailed examination reports from both Dr. Raps and Dr. Godsick.[3]

i.  *Plaintiff Oh*

Based on his physical examination of plaintiff Oh, Dr. Raps found plaintiff Oh's "neurological status to be entirely normal,"[4] and concluded that there was "no clinical evidence to

---

[3] Plaintiffs rely on *Junco v. Ranzi*, 733 N.Y.S.2d 897 (2d Dep't 2001) to argue that defendants cannot establish a prima facie case of lack of serious injury because the affidavits submitted by defendants' doctors do not set forth the objective tests they performed while examining plaintiffs.  Unlike in *Junco*, however, defendants here have submitted detailed examination reports by Dr. Raps and Dr. Godsick, which do set forth the objective tests those doctors performed on plaintiffs.

[4] Dr. Raps noted that plaintiff Oh suffered from abnormal eye movements, but wrote in his report that plaintiff Oh's father had noted the abnormal eye movements when plaintiff was two years old.  Because the abnormality pre-dated the accident at issue here, and there is no allegation that the accident exacerbated the abnormality, I need not consider the abnormal eye movements.

suggest that she sustained any neurologic injury in the accident of June 2007." Affidavit of Mitchell S. Raps, M.D., regarding Chi Son Oh, dated October 21, 2008 ("Raps (Oh) Aff.") ¶ 10. Dr. Raps noted that plaintiff Oh's mental status, cranial nerve, motor, sensory, gait, mechanical, and range of motion examinations all returned normal results. *Id.* ¶¶ 5-9. Dr. Raps further noted that he did not "find any objective medical evidence to indicate that Ms. Oh has suffered a medically determined injury or impairment that has prevented her from performing her usual and customary daily activities." *Id.* ¶ 11.

Dr. Godsick, who performed an orthopedic examination of plaintiff Oh, determined, based on his "review of the records and [his] examination of Ms. Oh," that "she demonstrates no clinical evidence of a herniated disc either in the neck or the lower back. There is no pathology relative to the knees. The patient is status post arthroscopic evaluation of the left shoulder. There is no functional loss. She is not under treatment and does not require any." Affidavit of Peter A. Godsick, M.D., regarding Chi Son Oh, dated October 27, 2008 ("Godsick (Oh) Aff.") ¶ 14. Dr. Godsick reported that examinations of plaintiff Oh's cervical spine and lumbosacral spine returned normal results, and while he observed arthroscopic scars[5] on Oh's left shoulder, noted that

_____

[5] According to Merriam-Webster's Medical Dictionary, "arthroscopy" is defined as "examination of a joint with an arthroscope," and "arthroscope" is defined as "an endoscope that is inserted through an incision near a joint (as the knee) and is used for the visual examination, diagnosis, and treatment of

they were "healed" and "not tender." *Id.* ¶¶ 6, 6, 11, 13.

Dr. Mosesson's review of plaintiff Oh's MRI scans found only degenerative changes in Ms. Oh's cervical spine, lumbosacral spine, and right shoulder. Affidavit of Roger E. Mosesson, M.D., regarding Chi Son Oh, dated October 23, 2008 ("Mosesson (Oh) Aff.") ¶¶ 4-6. While he noted a "broad left paramedian/ posterolateral herniation" while examining the scan of Ms. Oh's cervical spine, he specified that "the herniation is tiny and does <u>not</u> affect the spinal cord or any discrete nerve root," and was "of indeterminate age." *Id.* ¶ 4 (emphasis in original). In particular, Dr. Mosesson noted with regard to plaintiff Oh's left shoulder that there was "no demonstrated tear of the left anterior glenoid labrum." *Id.* ¶ 6.

These reports provide objective medical evidence that any injury plaintiff Oh sustained as a result of the accident at issue here was mild, and that plaintiff Oh has since recovered from her injuries such that they do not prevent her from engaging in her regular daily activities. The reports are sufficient to meet defendants' burden of stating a prima facie case that plaintiff Oh did not suffer a "permanent consequential limitation" or a "significant limitation."

---

the interior of a joint." *See* http://www.merriam-webster.com/ (select "medical" and search for "arthroscopy" and "arthroscope") (last accessed Feb. 3, 2008).

    *ii.  Plaintiff Han*

     During his physical examination of plaintiff Han, Dr. Raps
performed mental status, cranial nerve, motor, sensory, and gait
examinations, which all returned normal results.  Affidavit of
Mitchell S. Raps, M.D., regarding Soo Jin Han, dated October 21,
2008 ("Raps (Han) Aff.") ¶¶ 5-9.   Dr. Raps found that plaintiff
Han's "deep tendon reflexes were symmetric at 2+, except for the
right knee jerk which measured only 1+," *id.* ¶ 7, and concluded
that "[a]side from the diminished right knee jerk, of uncertain
etiology, Ms. Han's neurologic examination was normal."  *Id.* ¶
11.  Dr. Raps further noted that he did not "find any objective
medical evidence to indicate that Ms. Han has suffered a
medically determined injury or impairment that has prevented her
from performing her usual and customary daily activities."  *Id.* ¶
12.

     Dr. Godsick determined, based on his "review of the records
and [his] examination of Ms. Han, that she demonstrates no
clinical evidence of a herniated disc either in the neck or the
lower back.  There is no pathology related to the shoulders.  She
is not under active orthopedic care, is working, and does not
require orthopedic care."  Affidavit of Peter A. Godsick, M.D.,
regarding Soo Jin Han, dated October 22, 2008 ("Godsick (Han)
Aff.") ¶ 14.  Dr. Godsick reported that examinations of plaintiff
Oh's cervical spine and lumbosacral spine returned normal

results.  *Id.* ¶¶ 6, 11, 13.

Dr. Mosesson's review of plaintiff Han's cervical spine MRI scan uncovered a herniation that did not affect the spinal cord but does "impinge on the left C6 root sleeve."  Affidavit of Roger E. Mosesson, M.D., regarding Soo Jin Han, dated October 23, 2008 ("Mosesson (Han) Aff.") ¶ 3.  Other than "straightening of the cervical lardosis," he concluded that Ms. Han's cervical spine was "without further note."  *Id.*  Examining the MRI scan of Ms. Han's lumbosacral spine, Dr. Mosesson observed a "small to moderate sized broad central herniation . . . which causes moderate generalized canal stenosis but does not affect any discrete nerve root."  *Id.* ¶ 4.  He also observed two other small herniations, which did not affect nerve roots.  *Id.*  He concluded that plaintiff Han's lumbosacral spine was "otherwise unremarkable."  *Id.*  Reviewing the MRI scan of plaintiff Han's right shoulder, which he noted was of "below average" quality," Dr. Mosesson concluded that no abnormality was present.  *Id.* ¶ 5.

As with plaintiff Oh, the foregoing reports provide objective medical evidence that any injury plaintiff Han sustained as a result of the accident at issue here was mild, and that plaintiff Han has since recovered from her injuries such that they do not prevent her from engaging in her regular daily activities.  The reports are sufficient to meet defendants' burden of stating a prima facie case that plaintiff Han did not

suffer a "permanent consequential limitation" or a "significant limitation."

   2.   *Plaintiffs' Rebuttal of Defendants' Prima Facie Case*

   To rebut defendants' evidence and to show that they have suffered a "permanent consequential limitation" or a "significant limitation," plaintiffs submitted affidavits from Jong Won Yom, D.C., a chiropractor who treated both plaintiffs following the accident; affirmations from Dr. Jerry A. Lubliner, an orthopedist who examined plaintiff Oh on five occasions between September and November 2007 and on September 23, 2008, and who examined plaintiff Han on September 23, 2008; and affidavits from three radiologists, Drs. Richard A. Heiden, Richard J. Rizzuti, and Mark Shapiro.[6]

---

[6] Defendants object to my consideration of plaintiffs' radiologists' affidavits because plaintiffs failed to designate any of the radiologists as expert witnesses. Federal Rule of Civil Procedure 26(a)(2)(C) provides that parties must disclose the identities of proposed expert witnesses in accordance with court order, which, according to Magistrate Judge Gold's September 4, 2008 order, was to be accomplished by September 25, 2008. As I noted at oral argument in this matter, however, issues of discovery compliance are not properly raised in a motion for summary judgment. In this district, such issues are to be raised before the assigned Magistrate Judge in the first instance. Accordingly, the radiologists' affidavits are not precluded for the purposes of this motion.

   Defendants also contend that I should not consider Dr. Lubliner's report because plaintiffs allegedly failed to designate Dr. Lubliner as an expert witness by September 25, 2008, as Magistrate Judge Gold's order required. Plaintiffs designated Dr. Lubliner as an expert witness by notice dated September 10, 2008, which allegedly was not received by defendants until October 3, 2008. A sworn affidavit attached to the notice attests that the notice was mailed to defendants on September 10, 2008. Other than a partially legible timestamp on the notice indicating an October receipt date, defendants have submitted no evidence that the notice was not served on them in a timely manner. Nor have defendants raised the timeliness issue before Magistrate Judge Gold. Therefore, I will consider Dr. Lubliner's report.

*i. Plaintiff Oh*

Dr. Yom initially examined plaintiff Oh on June 25, 2007 and thereafter treated her three times a week until January 5, 2008. Chiropractor's Affidavit for Chi Son Oh dated November 22, 2008 ("Yom (Oh) Aff.") ¶ 4. His most recent examination of Ms. Oh was on November 20, 2008. *Id.* ¶¶ 4-5. Dr. Yom noted that Ms. Oh's chief complaints related to her neck, back, both shoulders and both knees, and that Ms. Oh stated she had no history of injury to these areas prior to the accident at issue here. *Id.* ¶¶ 5-6. Dr. Yom conducted range of motion tests using a goniometer with regard to plaintiff Oh's cervical spine and lumbar spine, finding that both returned results of "severely restricted with pain." *Id.* ¶¶ 8-13.[7] He noted that "subjective patient pain is not a

---

[7] Specifically, Dr. Yom found as follows:

"Upon initial examination on June 25, 2007, in regard to the cervical spine . . . Cervical flexion - Normal range of motion is 60 degrees, today's result: 40 degrees, pain with movement at end point; Cervical extension - normal range of motion is 75 degrees, today's result: 15 degrees, pain with movement at end point; Cervical right lateral flexion - normal range of motion is 45 degrees, today's result: 10 degrees, pain with movement at end point; Cervical left lateral flexion - normal range of motion is 45 degrees, today's result: 10 degrees, pain with movement at end point; Cervical right rotation - normal range of motion is 80 degrees, today's result: 60 degrees, pain with movement at end point; and Cervical left rotation - normal range of motion is 80 degrees, today's result: 10 degrees, pain with movement at end point."

Yom (Oh) Aff. ¶ 8. Dr. Yom's November 20, 2008 examination of plaintiff Oh returned similar results, showing limited improvement and the following differences: cervical extension was 25 degrees, cervical right and left lateral flexion were 30 degrees each, and cervical left rotation was 70 degrees. *Id.* ¶ 9.

On June 25, 2007, Dr. Yom recorded the following results from his range of motion test relating to plaintiff Oh's lumbar spine:

Lumbar flexion - Normal range of motion is 80 degrees, today's result: 60 degrees, pain with movement at end point; Lumbar extension - normal

determining factor when measuring specific planar motion." *Id.*
¶¶ 10, 13.  He also noted that in June 2007 and November 2008,
Ms. Oh has a positive left straight leg raising sign at 70
degrees and 60 degrees, respectively.  *Id.* ¶ 14.  Dr. Yom
conducted a variety of other range of motion tests relating to
Ms. Oh's cervical spine and lumbar spine, all of which returned
positive results.  *Id.* ¶¶ 15-16.[8]  In addition, Dr. Yom referred
Ms. Oh for MRI scans and reviewed them, finding that her cervical
and lumbar spine showed disc herniations, her right shoulder
showed acromion impingement on the supraspinatus muscle, her left
shoulder showed a probable partial tear in the anterior glenoid
labrum, and both Ms. Oh's knees showed ligament sprains.  *Id.* ¶¶
17-29.  Dr. Yom also noted that plaintiff Oh successfully
underwent diagnostic and operative arthroscopy of the left
shoulder on October 25, 2007.  *Id.* ¶ 31.

---

range of motion is 25 degrees, today's result: 10 degrees, pain with
movement at end point; Lumbar right lateral flexion – normal range of
motion is 25 degrees, today's result: 15 degrees, pain with movement at
end point; Lumbar left lateral flexion – normal range of motion is 25
degrees, today's result: 10 degrees, pain with movement at end point;
Lumbar right rotation – normal range of motion is 30 degrees, today's
result: 10 degrees, pain with movement at end point; and Lumbar left
rotation – normal range of motion is 30 degrees, today's result: 15
degrees, pain with movement at end point.

*Id.* ¶ 11.  Dr. Yom's November 20, 2008 examination of plaintiff Oh returned
similar results, showing limited improvement and the following differences:
Lumbar flexion was 80 degrees, lumbar extension was 15 degrees, lumbar left
lateral flexion was 15 degrees, lumbar right rotation was 20 degrees, and
lumbar left rotation was 20 degrees.  *Id.* ¶ 12.

[8] These tests included the cervical compression test, the cervical
distraction test, the shoulder depression test, Kemp's test, Spurling's test,
the straight leg raise test, Laseque's test, and Braggard's test.  Yom (Oh)
Aff. ¶ 17.

Based on his examinations of plaintiff Oh, Dr. Yom concluded that Ms. Oh is "permanently disabled," having suffered "significant soft tissue injuries around her cervical spine, lumbar spine, both shoulders and both knees, resulting in limitations with structural damages in the involved areas[.]" *Id.* ¶ 33. He further concluded that plaintiff Oh's impairments were permanent and that to a reasonable degree of physiatric certainty, they were caused by injuries sustained during the June 24, 2007 accident. *Id.* ¶¶ 33-34. He also noted that Ms. Oh can "expect chronic pain with periodic serious exacerbation of pain and weakness in her neck, back, both shoulders and both knees . . . causing her to alter her everyday life styles [sic] in order to cope with these injuries," and that Ms. Oh's injuries have already prevented her "from performing many of the material acts which constitute her usual and customary daily activities since the date of the motor vehicle accident[.]" *Id.* ¶¶ 39, 41. According to Dr. Yom, any further medical treatment Ms. Oh receives will be palliative in nature. *Id.* ¶¶ 36, 40.

Dr. Lubliner also examined plaintiff Oh following the 2007 accident. After reviewing records from Dr. Yom and plaintiff Oh's MRI scans, noting that plaintiff complained of pain in her left shoulder, Dr. Lubliner suggested and plaintiff Oh successfully underwent diagnostic and operative arthroscopy of the left shoulder on October 25, 2007. Affidavit of Jerry A.

Lubliner, M.D., regarding plaintiff Oh, dated December 2, 2008

("Lubliner (Oh) Aff.") ¶¶ 11-12.  His examinations of plaintiff

Oh's cervical spine, shoulders, and lumbosacral spine using a

goniometer on September 5, 2007 and September 23, 2008 resulted

in findings of "limited" range of motion for all three areas.

*Id.* ¶¶ 15-29.[9]  Dr. Lubliner concluded that "[b]ased on the

history, physical examination, and review of medical records, I

feel this patient has and will continue to have permanent

---

[9] Specifically, Dr. Lubliner found as follows:

Upon initial examination on September 5, 2007, in regards to the neck, she can flex 30; extend 30; laterally flex 40 and laterally rotate 60 complaining of pain on motion at the cervicothoracic junction.  Normal range of motion of the cervical spine is flexion to 40; extension to 30; lateral flexion to 60 and lateral rotation to 80.

Lubliner (Oh) Aff. ¶ 16.  On his September 23, 2008 examination of plaintiff Oh's cervical spine, Dr. Lubliner found similar results with moderate improvement: "she can flex 40; extend 30; left laterally flex 40, right 60 and laterally rotate left 50 and right 70 complaining of pain at the left trapezius at the limits of motion." *Id.* ¶ 17.
With regard to plaintiff Oh's shoulders, Dr. Lubliner found the following on September 5, 2007:

Forward flexion bilaterally was 180; abduction on the right was 180; left was 170; external rotation on the right was vertical plus 30; left was vertical plus 20; internal rotation on the right was to T10; and left was to T12.  Normal range of motion of the shoulders is forward flexion of 180; abduction 170; external rotation; and internal rotation to T12.

*Id.* ¶ 19.  Upon postoperative examination on January 30, 2008, in regard to Ms. Oh's left shoulder, Dr. Lubliner found that she could "forward flex 180 and abduct 170; externally rotate vertical plus 20 and internally rotate to L1." *Id.* ¶ 22.  On September 23, 2008, Dr. Lubliner found that Ms. Oh could "forward flex 170; abduct 150; externally rotate vertical plus 10 and internally rotate to L1.  Normal range of motion of the shoulders is forward flexion of 180, abduction 170, external rotation to the vertical and internal rotation to T12." *Id.* ¶ 23.
With regard to plaintiff Oh's back, Dr. Lubliner found the following on September 23, 2008: "she can flex 90, extend 20; laterally flex 40 and laterally rotate 60.  She has spasm in the lumbosacral junction.  Normal range of motion of the lumbosacral spine is flexion to 90, extension to 40, lateral flexion to 60 and lateral rotation to 80." *Id.* ¶ 25.

scarring of the left shoulder, loss of range of motion and weakness of the left shoulder, and permanent recurrent pain by history." *Id.* ¶ 28. He specifically found that "[i]n regard to the neck and back, she has and will continue to have permanent loss of range of motion and permanent recurrent pain." *Id.* ¶ 29. He also noted that he "[felt] that the accident of June 24, 2007 [was] the competent cause for injuries to [plaintiff Oh's] neck, back and left shoulder." *Id.* ¶ 30.

### ii. Plaintiff Han

Dr. Yom initially examined plaintiff Han on June 25, 2007 and thereafter treated her three times a week until December 13, 2007. Chiropractor's Affidavit for Soo Jin Han dated November 22, 2008 ("Yom (Han) Aff.") ¶ 4. His most recent examination of Ms. Han was on November 20, 2008. *Id.* ¶¶ 4-5. Dr. Yom noted that Ms. Han's chief complaints related to her neck, back, and right shoulder, and that Ms. Han stated she had no history of injury to these areas prior to the accident at issue here. *Id.* ¶¶ 5-6. Dr. Yom conducted range of motion tests using a goniometer with regard to plaintiff Han's cervical spine and lumbar spine, finding that both returned results of "severely restricted with pain." *Id.* ¶¶ 8-13.[10] He noted that "subjective

---

[10] Specifically, Dr. Yom found as follows:

"Upon initial examination on June 25, 2007, in regard to the cervical spine . . . Cervical flexion - Normal range of motion is 60 degrees, today's result: 30 degrees, pain with movement at end point; Cervical extension - normal range of motion is 75 degrees, today's result: 10

patient pain is not a determining factor when measuring specific planar motion." *Id.* ¶¶ 10, 13. He also noted that in June 2007 and November 2008, Ms. Han had a positive left straight leg raising sign at 70 degrees. *Id.* ¶ 14. Dr. Yom conducted a variety of other range of motion tests relating to Ms. Han's cervical spine and lumbar spine, all of which returned positive results. *Id.* ¶ 17.[11] He also found that Ms. Han had a limited

---

degrees, pain with movement at end point; Cervical right lateral flexion – normal range of motion is 45 degrees, today's result: 5 degrees, pain with movement at end point; Cervical left lateral flexion – normal range of motion is 45 degrees, today's result: 15 degrees, pain with movement at end point; Cervical right rotation – normal range of motion is 80 degrees, today's result: 45 degrees, pain with movement at end point; and Cervical left rotation – normal range of motion is 80 degrees, today's result: 70 degrees, pain with movement at end point."

Yom (Oh) Aff. ¶ 8. Dr. Yom's November 20, 2008 examination of plaintiff Han returned similar results, showing limited improvement and the following differences: cervical extension was 30 degrees, cervical right lateral flexion was 15 degree, cervical right rotation was 70 degrees, and cervical left rotation was 60 degrees. *Id.* ¶ 9.

On June 25, 2007, Dr. Yom recorded the following results from his range of motion test relating to plaintiff Han's lumbar spine:

Lumbar flexion – Normal range of motion is 80 degrees, today's result: 50 degrees, pain with movement at end point; Lumbar extension – normal range of motion is 25 degrees, today's result: 15 degrees, pain with movement at end point; Lumbar right lateral flexion – normal range of motion is 25 degrees, today's result: 15 degrees, pain with movement at end point; Lumbar left lateral flexion – normal range of motion is 25 degrees, today's result: 10 degrees, pain with movement at end point; Lumbar right rotation – normal range of motion is 30 degrees, today's result: 10 degrees, pain with movement at end point; and Lumbar left rotation – normal range of motion is 30 degrees, today's result: 15 degrees, pain with movement at end point.

*Id.* ¶ 11. Dr. Yom's November 20, 2008 examination of plaintiff Han returned similar results, showing limited improvement and the following differences: Lumbar flexion was 70 degrees, lumbar right lateral flexion was 20 degrees, lumbar left lateral flexion was 20 degrees, lumbar right rotation was 15 degrees, and lumbar left rotation was 20 degrees. *Id.* ¶ 12.

[11] These tests included the cervical compression test, the cervical distraction test, the shoulder depression test, Kemp's test, Spurling's test, the straight leg raise test, Laseque's test, and Braggard's test. Yom (Han) Aff. ¶ 17.

range of motion in her right shoulder, and that the
"supraspinatus tendonitis test of the right shoulder" was
positive. *Id.* ¶ 16. In addition, Dr. Yom referred Ms. Han for
MRI scans and reviewed them, finding that her cervical and lumbar
spine showed disc herniations and straightening of the cervical
lordosis, and that her right shoulder showed a "partial tear of
the supraspinatus tendon with encroachment syndrome." *Id.* ¶¶ 18-
24.

Based on his examinations of plaintiff Han, Dr. Yom
concluded that Ms. Han is "permanently disabled," having suffered
"significant soft tissue injuries around her cervical spine,
lumbar spine and right shoulder, resulting in limitations with
structural damages in the involved areas[.]" *Id.* ¶ 25. He
further concluded that plaintiff Han's impairments were permanent
and that to a reasonable degree of physiatric certainty, they
were caused by injuries sustained during the June 24, 2007
accident. *Id.* ¶¶ 25-26. He also noted that Ms. Han can "expect
chronic pain with periodic serious exacerbation of pain and
weakness in her neck, back, and right shoulder . . . causing her
to alter her everyday life styles [sic] in order to cope with
these injuries," and that Ms. Han's injuries have already
prevented her "from performing many of the material acts which
constitute her usual and customary daily activities since the
date of the motor vehicle accident[.]" *Id.* ¶¶ 31, 33. According

to Dr. Yom, any further medical treatment Ms. Han receives will
be palliative in nature.  *Id.* ¶¶ 28, 32.

Dr. Lubliner also examined plaintiff Han, apparently for the
first time on September 23, 2008.  After reviewing records from
Dr. Yom and plaintiff Han's MRI scans, Dr. Lubliner performed his
own examination of Ms. Han's cervical spine, shoulders, and
lumbosacral spine using a goniometer, finding that Ms. Han's
range of motion was limited in each area.[12]  Affidavit of Jerry
A. Lubliner, M.D., regarding plaintiff Han, dated December 2,
2008 ("Lubliner (Han) Aff.") ¶¶ 11-17.  He further noted that Ms.
Han "has a positive straight-leg raising sign on the right at 40
degrees."  *Id.* ¶ 16.  Dr. Lubliner concluded that "[b]ased on the
history, physical examination, and review of medical records, I
feel this patient has and will continue to have permanent
deformities.  She has and will continue to have permanent loss of

---

[12] Specifically, Dr. Lubliner found that on September 23, 2008, with
regard to plaintiff Han's neck, "she can flex 30; extend 30; laterally flex 40
and laterally rotate 60 complaining of pain at the right trapezius at the
limits of motion.  Normal range of motion of the cervical spine is flexion to
40; extension to 30; lateral flexion to 60 and lateral rotation to 80."
Lubliner (Han) Aff. ¶ 11.
    With regard to plaintiff Han's shoulders, Dr. Lubliner found the
following on September 23, 2008: "Forward flexion right is 160; left is 180;
abduction on the right was 150; left is 170; external rotation on the right
was vertical; left was vertical plus 30; internal rotation on the right is to
T12; and left is to T12.  Normal range of motion of the shoulders is forward
flexion of 180, abduction 170, external rotation vertical; and internal
rotation to T12."  *Id.* ¶ 13.
    With regard to plaintiff Han's back, Dr. Lubliner found the following on
September 23, 2008: "she can flex 80, extend 30; laterally flex 40 and
laterally rotate 60 complaining of pain at the lumbosacral junction on the
left lateral flexion and extension.  Normal range of motion of the lumbosacral
spine is flexion to 90, extension to 40, lateral flexion to 60 and lateral
rotation to 80."  *Id.* ¶ 15.

motion, permanent recurrent pain, permanent limitation of her
activities of daily living and permanent limitation of her
ability to walk." *Id.* ¶ 19. He noted that he "[felt] that the
accident of June 24, 2007 [was] the competent cause for injuries
to [plaintiff Han's] neck, back and right shoulder." *Id.* ¶ 30.

### iii. *Analysis of Plaintiffs' Rebuttal Cases*

To rebut defendants' case that plaintiffs have not
established a "serious injury," plaintiffs rely principally on
Dr. Yom's and Dr. Lubliner's conclusions that plaintiffs'
cervical, lumbar, and shoulder ranges of motion are restricted as
a result of injuries caused by the June 24, 2007 accident. A
medical analysis that "is obviously premised on plaintiff's
subjective complaints . . . does not rise to the level of
credible medical evidence required" to support a claim of
"serious injury." *Dwyer v. Tracey*, 480 N.Y.S.2d 781, 783 (3d
Dep't 1984). Where a diagnosis of loss of range of motion is
dependent on the patient's subjective expressions of pain, New
York courts have consistently held that such diagnoses are
insufficient to support an objective finding of a serious injury.
*Gillick v. Knightes*, 719 N.Y.S.2d 335, 336 (3d Dep't 2001)
(citing cases), *see also Ahmed v. H E Transport, Inc.*, No. 06 CV
2938, 2008 WL 520244, at *8 (E.D.N.Y. Feb. 26, 2008). However, a
medical analysis based in part on "subjective range-of-motion
tests" may be sufficient if it is supported by "other medical

evidence, such as MRIs showing disc herniations and bulges."
*Piper v. Henderson*, No. 07-Civ.-263, 2008 WL 3200204, at *1
(E.D.N.Y. July 10, 2008); *see also Thompkins v. Santos*, No.
98Civ.4634, 1999 WL 1043966, at *8 (S.D.N.Y. Nov. 16, 1999)
(doctor's affidavit based on an unsworn MRI report and doctor's
observations and range of motion tests raised a triable issue of
fact); *Ahmed*, 2008 WL 520244, at *9 (noting that "MRIs, x-rays
and CT scans are clearly objective evidence," and that "courts
have also considered passive range of motion tests based on
objective criteria, such as straight-leg raising tests and
observations of spasms, as objective evidence because they are
not based on the patient's complaints of pain").

In order to prove the extent or degree of physical
limitation, "an expert's designation of a numeric percentage of a
plaintiff's loss of range of motion" may be used, or an "expert's
qualitative assessment of a plaintiff's condition also may
suffice, provided that the evaluation has an objective basis and
compares the plaintiff's limitations to the normal function,
purpose and use of the affected body organ, member, function or
system." *Toure v. Avis Rent A Car Systems, Inc.*, 774 N.E.2d
1197, 1200 (N.Y. 2002). New York courts have found that a 20%
loss of range of motion raises a genuine issue of fact as to the
existence of a serious injury. *See Campbell v. Cloverleaf
Transp., Inc.*, 773 N.Y.S.2d 50 (1st Dep't 2004); *Howard v. King*,

762 N.Y.S.2d 423 (2d Dep't 2003).

Both Dr. Yom and Dr. Lubliner set forth detailed, specific findings with regard to plaintiffs' cervical, lumbar, and shoulder ranges of motion in their affidavits, which were based on objective testing methods. In addition, both compared their range-of-motion findings to "normal" cervical, lumbar and shoulder ranges of motion. According to both doctors, both plaintiffs have suffered losses of range of motion in excess of 20% with regard to their lumbar and cervical spines. Both doctors concluded that these losses were permanent, and with the exception of Dr. Lubliner's examination of plaintiff Han, which only occurred once, both doctors examined plaintiffs shortly after the accident as well as in the fall of 2008, allowing them to gauge whether plaintiffs' condition had improved and more accurately assess whether plaintiffs' impairments were indeed permanent. Both doctors examined MRIs of both plaintiffs, and Dr. Yom determined that both plaintiffs suffered from disk herniations and other impairments.[13] Finally, both doctors noted that based on their physical examinations of plaintiffs and plaintiffs' medical histories, they believed plaintiffs' impairments were caused by injuries sustained during the June 24, 2007 accident.

---

[13] Dr. Lubliner also discussed plaintiffs' disc herniations and other abnormalities in his affidavits, but specified that he was referring to other doctors' interpretations of plaintiffs' MRIs, not his own findings.

The evidence submitted by plaintiffs' medical experts conflicts to a substantial degree with the evidence submitted by defendants' medical experts. There is, however, no evidence that plaintiffs' experts were less meticulous, accurate, or evenhanded in their assessment of plaintiffs' injuries than were defendants' experts. Viewed in the light most favorable to plaintiffs as the non-moving parties, plaintiffs' submissions in opposition to defendants' motion raise material issues of fact as to whether plaintiffs sustained a "significant limitation" or a "permanent consequential limitation" as a result of injuries caused by the June 24, 2007 accident.[14] *See Mazo v. Wolofsky*, 779 N.Y.S.2d 921 (2d Dep't 2004) (plaintiff's physician's affirmation was sufficient to raise a triable issue of fact where it "set forth the tests he used to measure the plaintiff's range of motion, quantified the results of those tests, and concluded therefrom that the plaintiff sustained a decrease in certain aspects of his cervical and lumbar range of motion of 20% or more"); *Nelms v.*

---

[14] Defendants argue that plaintiffs have failed to present evidence sufficient to show that they sustained a "permanent consequential limitation" or a "significant limitation" because plaintiff Han missed only one day of work following the accident, and plaintiff Oh missed only two days of work following the accident and one week of work following her left shoulder surgery. Def.'s Reply at 12. This argument is misplaced. Whether plaintiffs sustained a "permanent consequential limitation" or a "significant limitation" turns not on how much work plaintiffs missed, but, in this case, on whether their cervical, lumbar and shoulder ranges of motion were restricted as a result of the accident, whether the restrictions are severe, and whether they are permanent. Here, plaintiffs have produced evidence sufficient to support a finding that their cervical and lumbar ranges of motion were severely and permanently restricted. A jury must decide whether defendants' evidence refutes the evidence presented by plaintiffs.

*Khokhar*, 784 N.Y.S.2d 572 (2d Dep't 2004) (objectively tested and measured restrictions in the range of motion of the cervical spine of 16% to 55% and in the lumbar spine of 22% to 33% were sufficient to raise a triable issue of fact as to whether plaintiff sustained a serious injury); *Williams v. New York City Transit Auth.*, 786 N.Y.S.2d 183 (2d Dep't 2004) (plaintiff raised a triable issue of fact where he submitted proof demonstrating that his chiropractor re-examined him three years after the accident and recorded objectively tested and measured restrictions of 15-35% in the range of motion of the cervical and lumbar spines); *Lantigua v. Williams*, 758 N.Y.S.2d 810 (1st Dep't 2003) (holding that a "range of motion in the neck that was restricted 10 degrees to the right, 20 degrees to the left, 5 degrees at forward flexion and 10 degrees at hyperextension, which restrictions, in view of their persistence, were described as permanent" was sufficient objective medical evidence to raise an issue of fact whether plaintiff sustained a serious injury); *Lopez v. Senatore*, 484 N.E.2d 130 (N.Y. 1985) ("Where the treating physician . . . identified a limitation of movement of the neck of only 10 degrees to the right or left, and on that predicate expressed the opinion that there was a significant limitation of use of a described body function or system, such evidence was sufficient for denial of summary judgment to defendants"). Accordingly, summary judgment is inappropriate,

and defendants' motion is denied with respect to plaintiffs'
claim for non-economic damages.

IV.  Plaintiffs' Claim for Economic Damages

In their complaint, plaintiffs also seek damages for
economic losses.  Compl. ¶¶ 26, 37, 41.  Because neither side
addresses this claim in their briefs, and because defendants'
notice of motion merely requests "summary judgment on the issue
of the failure of plaintiffs . . . to establish that either has
sustained a 'serious injury'," summary judgment on this claim is
inappropriate.  However, for the reasons stated below, the claim
is dismissed.

Under New York's No Fault Insurance Law, a plaintiff seeking
to recover for an economic loss must plead that he or she
suffered more than a "basic" economic loss --  i.e., that he or
she suffered an economic loss in excess of $50,000 -- in order to
state a claim.  *Fleming v. Forty*, No. 05-Civ.-9746, 2007 WL
987795, at *4 (S.D.N.Y. April 4, 2007); N.Y. Ins. Law §§ 5104(a)
(prohibiting recovery for "basic economic loss"), 5102(a)
(defining a "basic economic loss" as an economic loss of up to
$50,000).  Aside from conclusory statements that both plaintiffs
have suffered an "economic loss greater than basic economic loss
as defined by § 5102(d)," along with a claim for damages to
plaintiff Han's vehicle in the amount of $15,000, plaintiffs have
failed to plead facts sufficient to allege that they suffered

economic losses in excess of a basic economic loss.  Accordingly, their claim for economic damages must be dismissed.  *See Fleming*, 2007 WL 987795, at *4 (a plaintiff's economic loss claim "must be dismissed" if he fails to plead that he suffered an economic loss greater than $50,000); *Williams v. Elzy*, No. 00-Civ.-5382, 2003 WL 22208349, at *3 (S.D.N.Y. Sep. 23, 2003) (on motion for summary judgment, treating the plaintiff's claim as one for solely non-economic loss because the plaintiff did not submit any evidence indicating that she sought damages for more than "basic" economic loss).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is denied, and plaintiffs' claim for economic damages is dismissed.  The Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, NY
          March 9, 2008


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge